UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| THOMAS D. RENISON, | CASE NO. 15-21813 (JJT) |
| DEBTOR. | |
| FRANK M. JABLONSKI III, TRUSTEE, | |
| PLAINTIFF. | ADV. PRO. No. 15-02065 (JJT) |
| V. | RE: ECF No. 26 |
| THOMAS D. RENISON, | |
| DEFENDANT. | |

**APPEARANCES**

Lawrence W. Andrea, Esq.                                         Attorney for the Plaintiff
40 Richards Avenue, 3d Floor
Norwalk, CT 06854

Thomas D. Renison                                                Defendant, *Pro Se*
58 Old Farms Road
South Glastonbury, CT 06073

**MEMORANDUM OF DECISION**

**I.      Introduction**

Frank M. Jablonski Jr. ("Mr. Jablonski") brought this action against Thomas D. Renison ("Renison", "Debtor" or "Defendant"), who was Mr. Jablonski's former financial advisor. When Mr. Jablonski passed away shortly after filing the instant adversary proceeding, the Court substituted his son and personal representative of his probate estate, Frank M. Jablonski III ("Jablonski" or "Plaintiff") as the Plaintiff in this

action. The Plaintiff asserts three causes of action in the Nondischargeability Complaint, each of which seeks to deny the Debtor's discharge on account of his fraudulent dealings as Mr. Jablonski's financial advisor.

On July 15, 2016, the Plaintiff moved for summary judgment on all of his claims. Despite the grant of numerous extensions,[1] the Defendant, a *pro se*, never filed a response to the motion. For the reasons that follow, the movant has met his burden of demonstrating that no material issues of fact remain for trial, and therefore summary judgment is GRANTED.

## II.     Jurisdiction

The United States District Court for the District of Connecticut has original jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This Court possesses the authority to hear and determine the proceeding on reference from the District Court pursuant to 28 U.S.C. § 157(a) and (b)(1). This is a 'core proceeding' pursuant to 28 U.S.C. § 157(b)(2)(I).[2]

## III.    Factual Background

The motion for summary judgment is premised upon the alleged preclusive effect of a civil judgment entered against the Defendant by the Superior Court of Maine (the "Maine Judgment") on December 1, 2011.[3] Mr. Jablonski commenced that underlying state court action (the "Maine Action") against Renison and three other defendants not implicated here, for, *inter alia*, fraudulently inducing him to loan $600,000 to fund a

---

[1]     *See, e.g.*, ECF Nos. 50, 55, 59 and 63.
[2]     Defendant has admitted that this Court has jurisdiction to hear and determine this matter. *See* ECF No. 1 (Complaint) at ¶ 2; ECF No. 8 (Answer to Complaint) at ¶ 2.
[3]     Jablonski MSJ Brief, ECF No. 26, at 2; Maine Judgment (Exh. 2 to Affidavit of Durward Parkinson, Mr. Jablonski's counsel in the Maine Action).

foreign resort project.[4] Following a bench trial, at which Rension represented himself and invoked his Fifth Amendment right not to testify, the state court entered judgment against Rension on all counts, including fraud.[5]

In 2006, Mr. Jablonski, a retired business executive then in his mid-seventies, engaged Renison to convert his 401k funds to an I.R.A..[6] Subsequent thereto, in May of 2008, Renison approached Mr. Jablonski to discuss a potential alternative investment in a Hungarinan resort project to be called "The Castle at Polgardi" (the "Castle").[7] Later that month, Renison introduced Mr. Jablonski to his business partner, Peter DiRosa ("DiRosa"), to discuss the project.[8] Rension then provided Mr. Jablonski with a written offering memorandum and business plan (collectively, the "Proposal") that he drafted to solicit investors for the Castle.[9] The Proposal contained multiple material misrepresentations, including the false representation that "various prominent public figures served on the corporate board and advisory committees [of the Castle] when in fact these people had not yet agreed to participate in the project."[10]

Relying on the Proposal, Mr. Jablonski signed an agreement to lend $600,000 to fund the project.[11] In return, Mr. Jablonski was to be repaid $1,000,000 within six months, plus taxes and fees incurred in connection with withdrawals from his retirement accounts to fund the loan.[12] Renison and DiRosa accompanied Mr. Jablonski to the bank

---

[4]   Maine Action Complaint (Exh. 1 to Parkinson Aff.), ¶¶ 19-27, 57-59.
[5]   Maine Judgment at 3.
[6]   *Id.* at 1-2.
[7]   *Id.* at 2.
[8]   *Id.*
[9]   *Id.* at 2-3.
[10]  *Id.* at 2.
[11]  *Id.*
[12]  *Ibid.*

3

to facilitate his wire transfer of $600,000 to a Hungarian bank.[13] The Castle was never constructed, and Mr. Jablonski recouped a mere $60,000 of the $1,000,000 owed.[14]

On May 24, 2011, the federal government filed a criminal complaint against Renison and DiRosa in the United States District Court for the District of Maine.[15] The complaint against Rension was later dismissed with the government's consent, as Renison testified for the government under a grant of immunity.[16]

On December 1, 2011, the state court entered judgment against Renison on all counts, including the common law fraud claim, and determined Mr. Jablonski's damages as follows: "the $600,000.00 loan payment; the $400,000.00 'fee for use of loan funds'; tax liability and penalty for withdrawal of retirement funds of $52,301.87; and lost annuity income of $253,500.00, for a ***total damages of $1,445,801.80***."[17] The Maine Judgment was affirmed on appeal.[18]

Based upon the facts underlying the Maine Action, the Securities and Exchange Commission and the State of Maine Office of Securities each revoked Renison's license to sell securities.[19] On April 10, 2015, Mr. Jablonski commenced an action in the Connecticut Superior Court to enforce the Maine Judgment.[20] On October 20, 2015, Rension filed a Chapter 7 petition in this Court. Mr. Jablonski's Nondischargeability

---

[13] *Ibid.*
[14] *Id.* at 3.
[15] *United States v. DiRosa*, 761 F.3d 144, 149 (1st Cir. 2014).
[16] *Id.* at 149-50.
[17] Maine Judgement at 3 (emphasis added).
[18] *Frank M. Jablonski Jr. v. Thomas D. Renison et al.*, No. Yor-13-570 (Me. Sept. 25, 2014) (Exh. 3 to Parkinson Aff. at 2).
[19] *In the Matter of Thomas D. Renison,* Investment Advisers Act of 1940 Release No. 3871, 2014 WL 2986900 (July 3, 2014); *In re: Thomas D. Renison,* No. COR-11-7846, 2012 WL 5816951 (Me. Off. Sec. Oct. 22, 2012); Exh. 4 to Parkinson Aff. at 2, 3, 7.
[20] Affidavit of Frank M. Jablonski III, ¶ 10.

Complaint, asserting claims under 11 U.S.C. § 523(a)(2)(A), (B) and (a)(19)(B), was filed with this Court on December 16, 2015.[21]

On July 15, 2016, the Plaintiff moved for summary judgment on all claims under the three-count Nondischargeability Complaint. Despite requesting and receiving numerous extensions,[22] Defendant, a *pro se*, never filed a response to the motion, never secured legal counsel to appear on his behalf, and otherwise never advanced a cognizable defense.

To this day, Rension has not paid a penny of the Maine Judgment.[23]

### IV. Discussion

#### A. *Summary Judgment Standards*

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr.P. 56(a) (made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056). The moving party must submit a statement of facts setting forth each fact that they deem beyond genuine dispute. Fed.R.Civ.P. 56(c); D. Conn. Local R. 56(a)(1). Concomitant with the dictates of Federal Rule of Civil Procedure 56(c), each undisputed fact set forth in a Local Rule 56(a)(1) Statement must be supported by citation to admissible record evidence, including "the affidavit of a witness competent to testify as to the facts at trial". D. Conn. Local R. 56(a)(3); *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible

---

[21] ECF No.1 at ¶¶ 7-22.
[22] *See, e.g.*, ECF Nos. 50, 55, 59 and 63.
[23] Plaintiff's Rule 56(a)(1) Statement, ¶ 13 (citing Jablonski Aff., ¶¶ 6, 10).

evidence need be considered by the trial court in ruling on a motion for summary judgment.").

While the "non-moving party need not respond to the motion . . . . a non-response runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (citing Fed.R.Civ.P. 56(e)(2)); D. Conn. Local R. 56(a)(1) (All material facts set forth in a Local Rule 56(a)(1) Statement and "supported by the evidence will be deemed admitted unless controverted" in conformity with Local Rule 56(a)(2).).

However, the mere "failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Vermont Teddy Bear* at 244). When adjudicating a summary judgment motion, the court "must be satisfied that the citation to evidence in the record supports the assertion" set forth in statement of undisputed facts, even if unopposed. *Vermont Teddy Bear*, 373 F.3d at 244. "And, of course, the court must determine whether the legal theory of the motion is sound." *Jackson*, 766 F.3d at 194.

B. *Collateral Estoppel*

Plaintiff argues that the Maine Judgment—and particularly its ruling against Renison on Mr. Jablonski's common law fraud claim—precludes any dispute as to the

6

material facts and establishes, as a matter of law, that the debt arising therefrom is not dischargeable under 11 U.S.C. § 523(a)(2)(A). The Court agrees.

"Where the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision." *In re DeTrano*, 326 F.3d 319, 322 (2d Cir. 2003) (citing *Grogan v. Garner*, 498 U.S. 279, 285–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Since the eponymous Maine Judgment was issued by a court of the State of Maine, Maine law must be applied to determine the judgment's preclusive effect. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985); 28 U.S.C.A. § 1738. Under Maine law, the doctrine of collateral estoppel "provides that issues actually litigated, decided, and necessary to a final judgment are binding in future litigation between the same parties." *Penobscot Nation v. Georgia-Pac. Corp.*, 254 F.3d 317, 323 (1st Cir. 2001) (citing *Morton v. Schneider*, 612 A.2d 1285, 1286 (Me. 1992)). To obtain preclusive effect, therefore, a prior judgment must satisfy a four-pronged test: (1) the issues must be the same as those presented in the prior forum; (2) the issues must have been actually litigated; (3) the issues must have been determined by a valid and final judgment; and (4) the determination of said issues must have been essential to the judgment. *In re Slosberg*, 225 B.R. 9, 14 (Bankr. D. Me. 1998). Below, this Court addresses each prong of this doctrine in turn.

7

First, the issues determined by the state court are the same as those presented here. The two actions rely upon a common set of facts, and the elements of common law fraud adjudicated by the Maine Judgment are "identical" to the elements of nondischargeability under 11 U.S.C. § 523(a)(2)(A). *Id.* at 14, n. 3 (citing *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)); *see also Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006) ("The elements of actual fraud under [the] Bankruptcy Code incorporate the general common law of torts and likewise include a false representation, scienter, reliance, and harm."). Under Maine law, a defendant is liable for fraud if he: "(1) makes a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage." *St. Francis de Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 818 A.2d 995, 1003 (Me. 2003).

Subsection (a)(2)(A) of § 523 provides, in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
  * * * *
(2) for money property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition

11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under this provision, a creditor must establish:

(1) the debtor made the representations;

8

    (2) at the time he knew they were false;

    (3) he made them with the intention and purpose of deceiving the creditor;

    (4) the creditor justifiably relied on such representations; and

    (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

*In re Couloute*, 538 B.R. 184, 188 (Bankr. D. Conn. 2015).

As the above recitation makes plain, the only distinction between the elements establishing fraud under Maine law and those required to except a debt from discharge under § 523(a)(2)(A) is the degree of scienter that must be proven—reckless disregard for the truth of a representation, under Maine law, or actual knowledge of falsity, under § 523(a)(2)(A). *Compare St. Francis*, 818 A.2d at 1003 *with Couloute*, 538 B.R. at 188. However, the Maine Judgment and related proceedings provide ample basis to infer that Renison, a seasoned financial advisor, acted with actual knowledge of the material misstatements contained within the Proposal that he created and deployed.[24] This Court has no trouble adopting such an inference here, as "[a] showing of reckless indifference to the truth is sufficient to demonstrate actual knowledge" under § 523(a)(2)(A). *In re Edwards*, 67 B.R. 1008, 1010 (Bankr. D. Conn. 1986).[25] Because the issues adjudicated by the Superior Court of Maine are identical to the issues presented by the instant Nondischargeability Complaint under § 523(a)(2)(A), this Court finds that the first

---

[24] Further, the Court finds that Renison's failure to respond to Plaintiff's Statement of Undisputed Facts constitutes an admission of said facts. *See* D. Conn. Local R. 56(a)(1). This includes Rennison's alleged admission, during the federal trial against DiRosa, that he used the Proposal, which contained material falsehoods, to induce Mr. Jablonski to invest in the Castle. Plaintiff's Rule 56(a)(1) Statement, ¶ 8 (citing Jablonski Aff., ¶ 9).

[25] Any distinction is further attenuated by the clear and convincing standard of proof required to establish this element under Maine law, *see St. Francis*, 818 A.2d at 1003, which outpaces the ordinary preponderance standard at issue for dischargeability exceptions under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991).

requirement for applying the doctrine of collateral estoppel has been satisfied. *See Slosberg*, 225 B.R. at 14, n. 3; *see also In re Thompson*, 511 B.R. 20, 28 (Bankr. D. Conn. 2014); *In re Damiano*, 2014 WL 2337964, at *4 (Bankr. D. Conn. 2014); *In re Bugnacki,* 439 B.R. 12, 25 (Bankr. D. Conn. 2010).

Second, the issues involved here were actually litigated in the Maine Action. Mr. Jablonski properly pleaded, prosecuted and ultimately prevailed at trial on his fraud claim against Rension.

Third, the Maine Judgment, subsequently affirmed on appeal, constituted a valid and final judgment on the merits of Mr. Jablonski's fraud claim against Rension.

Fourth, and finally, the issue of Renison's fraud was undoubtedly essential to the Maine Judgment, which adjudicated that very fraud. Upon calculating the out-of-pocket costs and lost annuity income that Mr. Jablonski suffered as a direct and proximate result of Renison's fraudulent actions, the state court awarded damages in the amount of $1,445,801.80.

In light of the of the foregoing analysis, this Court finds that the Maine Judgment satisfies each of the criteria necessary to apply collateral estoppel under Maine law and is, therefore, entitled to preclusive effect on the issue of nondischargeability under 11 U.S.C. § 523(a)(2)(A).

Although the Plaintiff moved for summary judgment on the two remaining claims set forth in the Nondischargeability Complaint, it is unnecessary to address these alternative nondischargeability claims since this Court has already determined that the debt established by the Maine Judgment is not dischargeable.

## V.     Conclusion

For the reasons stated above, summary judgment shall enter in favor of the Plaintiff on the 11 U.S.C. § 523(a)(2)(A) claim. The Defendant's debt to the Plaintiff in the amount of $1,445,801.80 is therefore adjudged and decreed nondischargeable.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 523(a)(2)(A), any and all claims asserted herein by the Plaintiff, Frank M. Jablonski III, Trustee, against the Defendant, Thomas D. Renison, are hereby determined to be NONDISCHARGEABLE DEBTS.

***IT IS FURTHER ORDERED*** that the Plaintiff, Frank M. Jablonski III, Trustee, is hereby awarded judgment against the Defendant, Thomas D. Renison, in the amount of $1,445,801.80, representing compensatory damages as determined by the Superior Court of Maine. Post-judgment interest shall accrue thereon from the entry date of the Maine Judgment pursuant to applicable law.

***IT IS FURTHER ORDERED*** that, pursuant to Bankruptcy Rule 9021, the Clerk, United States Bankruptcy Court, shall issue a separate judgment entry in accordance with the above order.

Dated at Hartford, Connecticut this 3rd day of March 2017.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut